UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 76.172.95.157,<br><br>    Defendant. | Case No.: 19cv79-BAS (LL)<br><br>**ORDER GRANTING RENEWED EX PARTE APPLICATION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**<br><br>**[ECF No. 6]** |

Currently before the Court is Plaintiff's February 25, 2019 "RENEWED *EX PARTE* APPLICATION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE." ECF No. 6. Because the Defendant has not been identified, no opposition or reply briefs have been filed. Having reviewed Plaintiff's motion and all supporting documents, the Court **GRANTS** the motion for the reasons set forth below.

### I.    BACKGROUND

Plaintiff alleges that it "is the owner of original, award winning adult motion pictures featured on its subscription-based adult websites." ECF No. 6-1 at 6. On January 10, 2019, Plaintiff filed a complaint against John Doe subscriber assigned IP address 76.172.95.157 alleging copyright infringement. ECF No. 1 ("Compl."). Plaintiff alleges that Defendant

has illegally infringed by downloading and distributing twenty-eight of its copyrighted movies over the BitTorrent file distribution network for an extended period of time. Id. at 2, 4. Plaintiff describes the BitTorrent network as a "system designed to quickly distribute large files over the Internet." Id. at 4. Plaintiff further alleges that Defendant, who "attempted to hide this theft by infringing Plaintiff's content anonymously," can be identified by his or her Internet Service Provider ("ISP"), Spectrum, through his or her IP address 76.172.95.157. Id. at 2.

On February 8, 2019, Plaintiff filed its first "Ex Parte Application For Leave To Serve A Third Party Subpoena Prior To A Rule 26(f) Conference." ECF No. 4. The Court denied Plaintiff's request without prejudice. ECF No. 5. On February 25, 2019, Plaintiff filed the instant renewed motion. ECF No. 6. Plaintiff seeks an order from the Court allowing it to serve a subpoena to Defendant's ISP seeking Defendant's true name and address pursuant to Federal Rule of Civil Procedure 45 so that Plaintiff may serve Defendant and prosecute the claims in its complaint. ECF No. 6-1 at 7.

## II.   LEGAL STANDARD

### A.   The Cable Privacy Act

The Cable Privacy Act generally prohibits cable operators from disclosing personally identifiable information regarding subscribers without the prior written or electronic consent of the subscriber. 47 U.S.C. § 551(c)(1). However, a cable operator may disclose such information if the disclosure is made pursuant to a court order and the cable operator provides the subscriber with notice of the order. 47 U.S.C. § 551(c)(2)(B). A cable operator is defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system." 47 U.S.C. § 522(5).

### B.   Early Discovery

A party may not seek discovery from any source before the Rule 26(f) conference unless that party first obtains a stipulation or court order permitting early discovery.

Fed. R. Civ. P. 26(d)(1). Courts in the Ninth Circuit apply the "good cause" standard in deciding whether to permit early discovery. Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) (adopting the conventional standard of "good cause" in evaluating a request for expedited discovery). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Id. Good cause for expedited discovery has been found in cases involving claims of infringement and unfair competition. Id. In infringement cases, expedited discovery is frequently limited to allowing plaintiffs to identify Doe defendants. See UMG Recordings, Inc. v. Doe, No. C-08-03999 RMW, 2008 WL 4104207, at *3 (N.D. Cal. Sept. 4, 2008) (granting leave to take expedited discovery for documents that would reveal the identity and contact information for each Doe defendant).

District courts in the Ninth Circuit apply a three-factor test for determining whether good cause exists to allow for expedited discovery to identify certain defendants. Columbia Ins. Co. v. seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999). First, the plaintiff should "identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court." Id. at 578. Second, the plaintiff must describe "all previous steps taken to locate the elusive defendant" to ensure that plaintiff has made a good faith effort to identify the defendant. Id. at 579. Third, plaintiff should establish that its lawsuit could withstand a motion to dismiss. Id.

### III. DISCUSSION

#### A. Identification of Missing Party with Sufficient Specificity

For the Court to grant Plaintiff's motion, Plaintiff must first identify the Doe defendant with sufficient specificity to enable the Court to determine that the Doe defendant is a real person subject to the Court's jurisdiction. Id. at 578. "Some district courts in the Ninth Circuit have determined that a plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation

3

19cv79-BAS (LL)

technology' to trace the IP addresses to a physical point of origin." 808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash E37917C8EEB4585E6421358FF32F29CD63C23C91, No. 12CV00186 MMA (RBB), 2012 WL 12884688, at *4 (S.D. Cal. May 8, 2012); see e.g., OpenMind Sols., Inc. v. Does 1-39, No. C 11-3311 MEJ, 2011 WL 4715200, at *2 (N.D. Cal. Oct. 7, 2011) (finding plaintiff met its burden to identify the Doe defendants with sufficient specificity by identifying the unique IP addresses of individuals engaged in BitTorrent protocol and using geolocation technology to trace the IP addresses to a point of origin within the state of California); Pink Lotus Entm't, LLC v. Does 1-46, No. C-11-02263 HRL, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011) (same). Others have found that merely identifying the IP addresses assigned to the defendants on the day of the purported infringement is sufficient to satisfy the first factor." 808 Holdings, LLC, 2012 WL 12884688, at *4; see e.g., First Time Videos, LLC v. Does, No. C 11-01675 LB, 2011 WL 1431619, at *2 (N.D. Cal. Apr. 14, 2011) ("First, First Time Videos has identified the Doe defendants with sufficient specificity by submitting a chart listing each of the defendants by the IP address assigned to them on the day it alleges the particular defendant engaged in the infringing conduct."). This Court finds the former standard persuasive.

Here, Plaintiff has provided a declaration from Tobias Fieser, an employee of IPP International UG ("IPP"), a company it hired to monitor and record online infringement of its movies by "monitor[ing] the BitTorrent file distribution network for the presence of copyrighted works" and using software that "identifies Internet Protocol ('IP') addresses that are being used by infringers to distribute copyrighted works within the BitTorrent File Distribution Network." ECF No. 6-2, Declaration of Tobias Fieser ("Fieser Decl."), ¶¶ 3-5. Mr. Fieser states that he determined that Defendant's IP address of 76.172.95.157 distributed multiple pieces of Plaintiff's copyrighted movies and that the address "is associated with significant long term BitTorrent use." Id. ¶¶ 7, 12. He also states that the movie pieces were recorded in a packet capture ("PCAP"), a "forensically sound interface for recording network traffic." Id. ¶ 8. Mr. Fieser states that digital files can be identified by their Cryptographic Hash Values and that IPP was able to determine that the files being

distributed by Defendant's IP address "have a unique identifier of the Cryptographic Hash outlined on Exhibit A [to Plaintiff's complaint]."[1] Id. ¶ 10.

Plaintiff also provided a declaration from Emilie Kennedy, Plaintiff's in-house counsel, in which Ms. Kennedy states that after Plaintiff received infringement data from IPP identifying IP address 76.172.95.157 as infringing its works, the IP address was automatically inputted into Maxmind's Geolocation Database on August 23, 2018, which traced it to a location in San Diego, California. ECF No. 6-2, Declaration of Emilie Kennedy ("Kennedy Decl."), ¶¶ 3-5. Ms. Kennedy states that Plaintiff also inputted the IP address into Maxmind prior to filing its complaint and prior to filing the instant renewed motion, and both times, IP address 76.172.95.157 continued to trace to San Diego, California. Id. ¶¶ 6-7.

Furthermore, Plaintiff provided a declaration from Susan B. Stalzer, an employee of Plaintiff who reviews the content of its motion pictures and who was tasked with reviewing contents of the infringing files identified in Exhibit A to the complaint and comparing them to Plaintiff's original works to confirm they were identical, strikingly similar or substantially similar. ECF No. 6-2, Declaration of Susan B. Stalzer, ("Stalzer Decl."), ¶¶ 3, 7-10. Ms. Stalzer also states that she used "American Registry for Internet Numbers ('ARIN') to confirm that the ISP Spectrum did own Defendant's IP address at the time of the infringements, and hence has the relevant information to identify Doe Defendant." Id. ¶ 11. The dates of the alleged infringing activity in Exhibit A range from July 5, 2017 through November 7, 2018. ECF No 1-1.

Because Plaintiff has provided the Court with the unique IP address and the dates and times of connection, the name of the ISP and/or cable operator that provided internet access for the user of the identified IP address, and used Maxmind geolocation technology

---

[1] Exhibit A is a table of Plaintiff's works allegedly infringed by IP address 76.172.95.157. ECF No. 1-1. The works are identified by hash value and website name. The table lists the date and time of the alleged infringement, and the registration numbers for the works that have either been registered with the United States Copyright Office or have copyright registrations pending. Id.; see also Compl. at 5-6.

to trace the IP address to this District, the Court finds that Plaintiff has made a sufficient showing that Doe 76.172.95.157 likely resolves to a real person or entity with a physical address in this District. See 808 Holdings, LLC, 2012 WL 12884688, at *4.

### B. Previous Attempts to Locate Defendant

Second, Plaintiff must describe all prior attempts it has made to identify the Doe defendant in a good faith effort to locate and serve them. See Columbia Ins. Co., 185 F.R.D. at 579. Plaintiff states that it "diligently attempted to correlate Defendant's IP address to Defendant by searching for Defendant's IP address" on various internet search tools; by reviewing sources of authority such as legislative reports and informational technology guides for other means of identification; and by consulting with computer investigators and cyber security experts. ECF No. 6-1 at 13-14. Plaintiff states that despite these efforts, it is unable to obtain the identity of the alleged infringer because Defendant's IP address is "assigned to Defendant by his or her [ISP], which is the only party that has the information necessary to identify Defendant by correlating the IP address with John Doe's identify." See id. at 6, 14. Plaintiff also provides a declaration from Philip Pasquale, a tech advisor for a cyber security firm, in which Mr. Pasquale states that "[b]ased on [his] experience in similar cases, Defendant's ISP Spectrum is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address 76.172.95.157 during the time of the alleged infringement." ECF No. 6-2, Declaration of Philip Pasquale ("Pasquale Decl."), ¶¶ 3, 10. Based on the above, the Court finds that Plaintiff has made a good faith effort to identify and locate the Doe defendant.

### C. Whether Plaintiff Can Withstand a Motion to Dismiss

"[A] plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (citations omitted). "To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." Id. (citation omitted). Before a

6

19cv79-BAS (LL)

copyright owner can initiate an infringement claim in court, "a copyright claimant generally must comply with [17 U.S.C.] § 411(a)'s requirement that 'registration of the copyright claim has been made.'" Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, No. 17-571, 2019 WL 1005829, at *3 (U.S. Mar. 4, 2019) (citing 17 U.S.C. § 411(a)). The U.S. Supreme Court recently held that "'registration . . . has been made' within the meaning of 17 U.S.C. § 411(a) not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application." Id. at *7.

Plaintiff provides evidence that it is the exclusive rights holder of the copyrighted works at issue. See ECF No. 1-1 ("Exhibit A"); ECF No. 6-2, Declaration of Greg Lansky ("Lansky Decl."), ¶ 3; Stalzer Decl. ¶¶ 7-10. Plaintiff states that its works at issue are either registered with the Copyright Office or have applications pending but does not specify the status of each particular work. ECF No. 6-1 at 16. Plaintiff alleges that between July 5, 2017 and November 7, 2018, Defendant infringed Plaintiff's copyrighted work by copying and distributing "the constituent elements of Plaintiff's [w]orks" by using the BitTorrent file distribution network. See Compl. at 6; ECF No. 1-1. Plaintiff further alleges that it did not authorize, permit, or consent to Defendant's copying or distributing this work. Compl. at 7. Accordingly, Plaintiff has alleged the prima facie elements of direct copyright infringement at least as to its registered works and could withstand a motion of dismiss. See Ellison, 357 F.3d at 1076; Columbia Ins. Co., 185 F.R.D. at 379-80.

### IV. CONCLUSION

Having found good cause, the Court **GRANTS** Plaintiff's motion for expedited discovery. For the foregoing reasons, it is hereby ordered that:

1. Plaintiff may serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on Spectrum that seeks only the true name and address of the subscriber assigned IP address 76.172.95.157. Plaintiff shall not subpoena additional information;

2. Plaintiff may only use the disclosed information for the purpose of protecting its rights in pursuing this litigation;

3. Within fourteen calendar days after service of the subpoena, Spectrum shall notify the subscriber that his or her identify has been subpoenaed by Plaintiff. The subscriber whose identity has been subpoenaed shall have thirty calendar days from the date of such notice to challenge the disclosure by filing an appropriate pleading with this Court contesting the subpoena;

4. If Spectrum wishes to move to quash the subpoena, it shall do so before the return date of the subpoena. The return date of the subpoena must allow for at least forty-five days from service to production. If a motion to quash or other customer challenge is brought, Spectrum shall preserve the information sought by Plaintiff in the subpoena pending resolution of such motion or challenge; and

5. Plaintiff shall serve a copy of this Order with any subpoena obtained and served pursuant to this Order to Spectrum. Spectrum, in turn, must provide a copy of this Order along with the required notice to the subscriber whose identity is sought pursuant to this Order.

**IT IS SO ORDERED**.

Dated: March 12, 2019

Honorable Linda Lopez
United States Magistrate Judge